## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BRANDT, pro se : | |
| : | |
| Plaintiff, : | Civil Action No. 3:06-cv-5639-FLW |
| : | |
| : | |
| v. : | |
| : | |
| SHEREE GANEY, : | |
| JYOTSNA AGRAWAL, : | |
| : | **OPINION** |
| Defendants. : | |
| : | |
| : | |

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion for Summary Judgment filed by Defendants Sherise Ganie[1] and Dr. Jyotsna Agrawal ("Defendants"). Plaintiff John Brandt, pro se ("Plaintiff"), filed the instant action against Defendants for allegedly denying him his Fourteenth Amendment Due Process rights. The Complaint alleges violation of 42 U.S.C. §1983. The Court holds that based on the disputed facts in the record, Defendant's Motion for Summary Judgment is denied. Further, the Court shall appoint Plaintiff pro bono counsel. However, Plaintiff's discovery request is denied without prejudice, but if upon further investigation pro bono counsel determines more discovery is necessary, those discovery requests should be directed to the Honorable Tonianne J. Bongiovanni, U.S.M.J.

---

[1] Plaintiff's Complaint refers to Ganie as "Sheree Ganey" as do the papers submitted by Defendants. However, the November 17th incident report in the record names "Sherise Ganie" as the officer who submitted the incident report. Affidavit of Gregory Ostaszewski, Ex. A, AKFC Incident Report. For the purposes of this motion, the Court will refer to Defendant as "Ganie" and asks Defendants to provide the Court with the proper spelling of Ganie's full name.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently a patient of the Ann Klein Forensic Center ("AKFC"), a state psychiatric hospital located in Trenton, New Jersey.  Pursuant to N.J.S.A. 30:4-27.10, Plaintiff was involuntarily civilly committed to AKFC after being found not guilty by reason of insanity on criminal charges of robbery.  Ganie and Agrawal are both employees of the New Jersey Department of Human Services ("NJDHS"); Ganie is a Medical Security Officer ("MSO") and Agrawal is a clinical psychiatrist at AKFC.

The events of November 17, 2006 are in dispute.  Sometime around 8:30 a.m., Ganie was conducting a walkthrough of Plaintiff's unit, Ward 7.  An incident report filed by Ganie states that Plaintiff purposefully bumped into Ganie as Plaintiff made his way towards the trash.. Affidavit of Patrick Ostaszewski, Ex. A, AKFC Incident Report ("Ostaszewski Affidavit"). Although Plaintiff admits "he didn't mean to get so close" as he walked by Ganie, he denies any physical contact.  Compl. ¶4. Buttressing Plaintiff's account is an affidavit from Roy Schmitt, an eyewitness and fellow patient at AKFC.  In his affidavit, Schmitt states that Plaintiff made no physical contact with Ganie as Plaintiff walked passed her.  Plaintiff claims that Ganie fabricated the incident and report to punish Plaintiff because "two medical security officers [were] fired for having inappropriate intimate relationships with him," after Plaintiff reported the alleged misconduct to AKFC officials. Compl. ¶2.

Shortly after the incident, Agrawal ordered that Plaintiff be transferred to the Intensive Treatment Unit ("ITU") for observation and seclusion. Ostaszewski Affidavit, Ex. A, AKFC Incident Report. Agrawal did not personally interview or evaluate Plaintiff before ordering his transfer, relying solely on Ganie's report.  Id. In fact, according to Plaintiff, Agrawal never has personally evaluated Plaintiff during his stay at AKFC.  Compl. ¶8. Plaintiff alleges that

Agrawal signed off on Ganie's disciplinary report despite Agrawal's knowledge of Ganie's previous harassment of Plaintiff.  Compl. ¶15. According to Patrick Ostaszewski, a registered nurse at AKFC on call at the time of the incident, Plaintiff was escorted to Ward 2 by MSOs around 9:00 a.m.  Ostazewski Affidavit, ¶¶ 4-6. Ostaszewski states, and AKFC records show, that Plaintiff "was seen by the treatment team on rounds sometime after 11:00 a.m. [on November 17, 2006] and before lunchtime, during which all residents are locked in their rooms for administrative purposes, and demonstrated appropriate behavior and promised not to assault anyone if released."  Id. ¶6. AKFC staff assured Plaintiff he would be released from isolated confinement at the next available opportunity.  Id. Nonetheless, Plaintiff alleges that after he was seen by medical staff, he remained in isolated confinement until 6:00 p.m.  Pl.'s Statement of Material Facts ¶ 12.

Plaintiff was not transferred back to Ward 7 until November 21, 2006 "[a]fter demonstrating no further negative behavior." Id. ¶8. According to Plaintiff's Interdisciplinary Progress Notes supplied by Defendants, Plaintiff was seen on rounds four times between November 17 and November 21, the date of his transfer to Ward 7. Ostaszewski Affidavit, Ex. A, Plaintiff's Interdisciplinary Progress Notes.  Ostaszewski states the only difference between Ward 2 and Ward 7, Plaintiff's regular unit, is the presence of more MSOs. Ostaszewski Affidavit ¶7. Plaintiff, however, provides a different description of Ward 2, stating that while in Ward 2, patients are unable to attend regular treatment sessions. Pl.'s Statement of Facts ¶4. In addition, Plaintiff claims that he was unable to access his personal belongings or any other materials while in his Ward 2 room. Id.

Plaintiff filed this action in the United States District Court for the District of New Jersey on November 27, 2006.  Defendants filed a joint answer to Plaintiff's Complaint on May 17, 2007.

3

Subsequently, Plaintiff's application for pro bono counsel was denied by Judge Bongiovanni on January 30, 2008.  On April 11, 2008, Defendants filed this Motion for Summary Judgment.  For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. When the burden of proof at trial is on the non-moving party, as in the case at bar, the moving party can satisfy its initial burden by submitting evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-movant's claim. Id. at 331.

Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986);

4

see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir.1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citation omitted).

**B. Plaintiff's 1983 Claim**

Plaintiff's claim for relief arises from 42 U.S.C. § 1983, which provides plaintiffs civil redress for the constitutional violations of state actors. Here, Plaintiff claims that his isolated confinement for psychiatric observation and subsequent five day transfer to Ward 2 violated his Fourteenth Amendment Due Process rights.  During his five day transfer to Ward 2, Plaintiff claims that he was not able to go to his treatment sessions and lacked access to his personal belongings. Plaintiff also alleges that Agrawal's failure to evaluate him as required by New Jersey law is a substantial deviation from professional judgment and a violation of the Fourteenth Amendment Due Process Clause.  Defendants argue that even if Plaintiff has adequately alleged a Fourteenth Amendment violation, they are entitled to qualified immunity.

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. . .subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983. The law does not create any substantive rights but rather provides "an avenue of recovery for the deprivation of established federal constitutional and statutory rights." Salley v. Rodriguez, No. 07-4914, 2008 WL 65106 at * 4 (D.N.J. Jan.4, 2008); see also Groman v.

Twp. of Manalapan, 47 F.3d 628, 633 (3d. Cir.1995). To establish a § 1983 claim, a plaintiff must demonstrate that the alleged conduct was committed by "(1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States." Stahl v. Main, No. 07-4123, 2008 WL 2446816, at *3 (D.N.J. June 16, 2008).

With respect to Plaintiff's 1983 claims, the Court will first discuss the applicable case law and balancing test under Youngberg v. Romeo.  Second, the Court will address whether the disputed events of November 17, 2006 give rise to an issue of material fact.  Third, the Court will determine whether Agrawal's failure to evaluate Plaintiff before ordering his transfer to Ward 2 isolation was a substantial deviation from professional judgment, thereby constituting a procedural due process violation. Fourth, the Court will address whether Plaintiff's right to adequate treatment and reasonable care was infringed by his inability to access his treatment sessions during his five day stay in Ward 2.  Finally, the Court will determine whether Defendants are entitled to qualified immunity.

### C. Youngberg Balancing Test

At the threshold, the Court notes that Plaintiff's claims are arising from alleged deprivations of Plaintiff's procedural due process rights.  Specifically, the Court must determine whether Plaintiff's Due Process Rights under the Fourteenth Amendment were violated when he was placed in isolated custody for two hours without first being evaluated by Agrawal and subsequently transferred to Ward 2 for five days.  The Deshaney Court recognized "that the protections of the Due Process Clause may be triggered when the State affirmatively acts and subjects an involuntarily confined individual to deprivations of liberty which are not among those generally authorized." Lanman v. Hinson, 529 F.3d 673, 682 (3d Cir. 2008) (discussing

Deshaney v. Winnebago County Dep't of Social Serv., 489 U.S. 189 (1989)).  Subsequently, in

Youngberg v. Romeo, the Supreme Court formulated a balancing test to "determine whether a

substantive right protected by the Due Process Clause has been violated."  457 U.S. 307 (1982).

The Court held, inter alia, that mental patients retain certain liberty interests, including personal

security and the freedom of movement, often referred to as the freedom from bodily restraints.

Id. Under Youngberg, a court must weigh two competing values, "the liberty of the individual

and the demands of an organized society." Id. (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)

(Harlan, J. dissenting)).   "[I]n balancing the state's interests against a confined person's liberty

interests the balance should not be left to the unbridled discretion of judge or jury." Scott v.

Plante, 691 F.2d 634, 637 (3d Cir. 1982).  At its most basic level, the Fourteenth Amendment

gives rise to a "State duty to provide reasonable safety for all residents and personnel within the

institution." Brandt v. Aunach, No. 05-2070, 2005 WL 3077922, at *2 (D.N.J. Nov. 14, 2005)

(quoting Youngberg, 457 U.S. at 324)).

However, to avoid excessive judicial interference with the internal operations of institutions

such as AKFC, decisions rendered by a professional state actor are "presumptively valid," and

are found to have violated a plaintiff's rights "only when the decision. . .is such a substantial

departure from accepted professional judgment, practice or standards as to demonstrate that the

person responsible actually did not base the decision on such judgment."  Youngberg, 457 U.S.

at 323. Involuntarily committed patients "are entitled to more considerate treatment and

conditions of confinement than criminals whose conditions of confinement are designed to

punish." Id. at 321-22. Not surprisingly, professional judgment devoid of reason or purpose and

retributive in nature is not afforded deference under Youngberg. Scott, 691 F.2d at 637 ("So long

as judge or jury determines that the conditions imposed were not punitive in nature or purpose,

reasonableness of nonpunitive conditions rests on whether the decision to subject the patient to such conditions was made by a professional competent in the relevant discipline.").  Punitive measures constitute grounds for a cognizable Due Process violation.  Nonetheless, an involuntarily committed patient need not show a professional state actor's conduct was retributive to demonstrate a violation of the Due Process Clause.  Scott, 691 F.2d at 638. Instead, in the case of an alleged violation of the right to be free from bodily restraint, a plaintiff can show "that the restraint was more than a reasonable professional judgment found necessary for safety or treatment." Id.[2] Thus, a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible actually did not base the decision on a judgment" does not satisfy the deferential Youngberg standard.  Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).

### a. The November 17, 2006 Incident

Initially, Plaintiff argues that the dispute over what occurred on November 17, 2006 between himself and Ganie gives rise to a disputed issue of material fact.  This Court agrees.  In light of

---

[2]    Similarly, pretrial detainees cannot be subjected to harsh conditions or treatments for retributive purposes.  In Bell v. Wolfish, the Supreme Court found "that [pretrial] detainees, not yet convicted of the crime charged, could not be punished" and as such, "any restrictions on liberty that were reasonably related to government objectives [must] not [be] tantamount to punishment." The Third Circuit further elucidated the Bell standard and warned that punitive measures taken against pretrial detainees are violative of the Due Process Clause:

> A court must decide whether the disability is imposed for the purpose punishment or whether it is but an incident of some other legitimate governmental purpose. . . .[I]f a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008). However, the Third Circuit has not extended Bell's language to involuntarily committed patients, instead relying on the Youngberg standard to resolve these conflicts.  Accordingly, Youngberg governs the case at bar.

the papers submitted by both parties, the Court finds that whether Ganie acted in retaliation is a material fact at issue in the case at bar.  Under Youngberg, "a state may not restrain residents of institutions except when and to the extent that professional judgment deems this necessary for the reasonable safety of residents and personnel within the institution, or to provide needed training or treatment.  Davy, 2006 WL 517685, at *2 (citing 457 U.S. at 323). Although the vast majority of claims alleging needless bodily restraints arise from instances of severe physical constraints, e.g. handcuffs, a properly plead violation of this right does not require the patient be strapped to a bed against his or her will. In Foucha v. Louisiana, the Supreme Court extended the right to be free from bodily restraint to instances of involuntary confinement.  504 U.S. 71, 80 (1992) (quoting Youngberg 457 U.S. at 316) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. . . .'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'").

In the instant matter, Ostaszewski avers that Plaintiff was never handcuffed or strapped to a gurney or otherwise physically restrained in his room.  Nonetheless, Plaintiff does not need to allege such actions, just that his freedom of movement was severely restricted by the actions of Ganie and Agrawal. Ultimately, if a jury decides that Ganie's actions were done out of spite or vindictiveness, her actions would not be afforded deference under the Youngberg test and constitute a violation of Plaintiff's Due Process rights. The evidence proffered by Defendants does not contradict Plaintiff's account that Ganie may have exaggerated Plaintiff's conduct in her disciplinary report nor does it tend to negate Ganie's potential motive for fabricating the report.

**b. Agrawal's Failure to Evaluate Plaintiff Before Ordering his Transfer to Ward 2**

9

**Isolation**

With respect to Agrawal, Plaintiff alleges that Agrawal's failure to evaluate him before placing him in Ward 2 constitutes a violation of his right to be free from bodily restraints.[3] Further, Plaintiff alleges that despite Agrawal's knowledge of Ganie's harassment of Plaintiff in the past, Agrawal turned a blind eye and signed off on Ganie's incident report without proper evaluation of Plaintiff's mental and emotional condition.  In support of his contention that Agrawal's actions were outside the bounds of professional judgment, Plaintiff cites N.J.S.A. 30:4-24.2(d)(3) which provides:

> To be free from physical restraint and isolation.  Except for emergency situations, in which a patient has caused substantial property damage or has attempted to harm himself or others and in which less restrictive means of restraint are not feasible, a patient may be physically restrained or placed in isolation only on a medical director's written order or that of his physician designee which explains the rationale for such action.  The written order may be entered <u>only after</u> the medical director or his physician designee has personally seen the patient concerned, and evaluated what ever episode or situation is said to require restraint or isolation.  Emergency use of restraints or isolation shall be for no more than 1 hour, by which time the medical director or his physician designee shall have been consulted and shall have entered an appropriate order in writing.  Such written order shall be effective for no more than 24 hours and shall be renewed if restraint and isolation are continued.

Plaintiff's Interdisciplinary Notes also indicate that Plaintiff was not seen until two  hours after Agrawal already had ordered Plaintiff be placed in isolated confinement, one more hour than permitted by the statute.

The Third Circuit has previously found that Title 30 of the New Jersey Revised Statutes "suggest a state right to reasonable care." <u>Scott</u>, 681 F.3d at 638 (finding that New Jersey law provided a state right to reasonable care pursuant to N.J.S.A. 30:4-24.2(e)(1)).  The <u>Scott</u> Court

---

[3]      Plaintiff does not allege that Defendants acted in concert, rather that each independently violated his right to be free from needless bodily restraints.

stated further that "[i]t is public policy of the state to provide adequate residential facilities for the treatment of mental illness" and that these policies give rise to "explicit patient rights granted in Title 30." Id.  Guided by the Circuit's interpretation, the district court in Brandt v. Monroe found that "N.J.S.A. 30:4-24.2(e)(2) provides that each patient committed to a mental institution has the right to be committed 'to the least restrictive conditions necessary to achieve the purposes of the treatment,'" a right properly cognizable as a liberty interest under the Fourteenth Amendment.  No. 05-3386, 2006 WL 1468394, at * 2 (D.N.J. May 24, 2006). Here, the record is silent as to why Agrawal failed to properly evaluate Plaintiff before placing him isolation. Agrawal does not contend that an emergency warranted such immediate action. Even if this Court assumes arguendo that Ganie did not fabricate or exaggerate her disciplinary report and Plaintiff was acting violently, the law would still require Agrawal to evaluate Plaintiff before placing him into isolated confinement.

Additionally, there remains a material issue of disputed fact as to how long Plaintiff was kept in isolation.  Defendants assert that Plaintiff was merely detained for two hours after Agrawal signed off on his transfer and that all patients at AKFC are confined to their rooms for administrative purposes four roughly two hours, between 11:00 a.m. and 1:00 p.m.  Ostaszewski Affidavit ¶6.  However, Plaintiff alleges that he was not released from isolation till 6:00 p.m., meaning Plaintiff would have been in isolation on Agrawal's orders for over nine hours.  The length of Plaintiff's isolation is relevant for two reasons.  First, if Plaintiff was subjected to isolated confinement for nine hours, Defendants would need to show that such a lengthy confinement was necessary for the safety of Plaintiff and others in AKFC.  Second, if a jury finds that Defendants violated Plaintiff's Due Process rights under Youngberg, the length of the isolated confinement could change the amount of damages a jury would award Plaintiff.  Thus,

the Court finds that Plaintiff's claims against Agrawal may proceed if Agrawal is not entitled to qualified immunity.

### c. Plaintiff's Right to Adequate Treatment and Reasonable Care

Plaintiff also challenges his five day internment in Ward 2 as an action taken in retaliation, or alternatively, an arbitrary decision devoid of professional judgment.  The Supreme Court in Youngberg "stressed the significance of professional judgment with respect to a program of treatment." Scott, 691F.3d at 636 (discussing Youngberg). However, institutional staff may not punish a civilly committed patient by withholding treatment sessions.  Here, no evidence has been presented to the Court showing or suggesting that Plaintiff was able to go to his regularly scheduled treatments or was allowed access to his personal belongings. Defendants present the affidavit of a registered nurse at AKFC who states that the conditions in both wards are similar. However, the affidavit does not contradict Plaintiff's assertion that although he may have been able to walk around Ward 2 and socialize with other patients confined to Ward 2 during his five day transfer, he was unable to leave Ward 2 to attend his treatment sessions.

Moreover, the Court finds nothing in the record indicating a valid reason for the five day delay in transferring Plaintiff back to Ward 7.  In fact, the record suggests that AKFC was satisfied with Plaintiff's evaluation after his two-hour isolated confinement and informed Plaintiff he would be released from isolated confinement as soon as possible. Ostaszewski Affidavit ¶6.  Nonetheless, Plaintiff was only transferred back to Ward 7 "[a]fter demonstrating no further negative behavior over the course of the next few days." Ostaszewski Affidavit ¶7. Even more telling is that Plaintiff was seen four times between November 17 and November 21. See Ostaszewksi Affidavit, Ex. A, Interdisciplinary Notes.  Although difficult to discern, the Interdisciplinary Progress Notes from the aforementioned visits do not contain any observations

12

that would have made AKFC officials wary of transferring Plaintiff back to Ward 7. Ostaszewski Affidavit, Ex. A, Interdisciplinary Progress Notes.  Again, Defendants fail to provide <u>any</u> reason, let alone one sounding in professional judgment, for the five day delay.

Plaintiff's claim, however meritorious, does not allege <u>who</u> was responsible for keeping him in Ward 2 and unable to access his regular treatments and his personal belongings.  In Plaintiff's Complaint, Plaintiff suggests that Ganie was responsible for fabricating a disciplinary report and Agrawal failed to properly examine Plaintiff before signing off on his transfer to isolated confinement.  Notwithstanding these allegations, Plaintiff fails to attribute his continued five day confinement to Ward 2 to either Defendant's actions.  The Court finds, that based on the facts as set forth by Plaintiff, Ganie could be found liable for his initial isolation. As an MSO, Ganie would obviously know what would happen to Plaintiff if she filed a fabricated disciplinary report stating that Plaintiff was acting violently.  However, Ganie was not responsible for AKFC staff failing to release Plaintiff from Ward 2 and not allowing him to attend his treatments.

As to Agrawal, notwithstanding the fact she may have failed to properly interview Plaintiff before ordering that he be isolated, Agrawal was not one of the AKFC officials who saw Plaintiff four times during his five day stay in Ward 2.  Although, based on the record and the allegations set forth in Plaintiff's Complaint, there is a substantial question whether either Defendant can be found liable for the five day stay in Ward 2 and Plaintiff's inability to access his treatments, the Court will not grant summary judgment as to this claim since it has not been briefed by Defendants as to whether these Defendants' actions proximately caused the five day detention.  In addition, Plaintiff may be able to allege which state actor, be it one of the

Defendants or another party, may be responsible for the alleged constitutional violation.[4]

The Court notes that Defendants' reliance on Sandin v. Conner, 515 U.S. 472 (1995) is misplaced. Courts in the Third Circuit have repeatedly applied the standard set forth in Youngberg in 1983 suits brought by involuntarily committed civil patients alleging due process violations. Davy, 2006 WL 517695, at *2 (applying Youngberg); cf. Hubbard, 538 F.3d at 232 (applying Bell standard to pretrial detainees challenging the conditions of their confinement). Lawful incarceration, unlike civil commitment and pretrial detainment, "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (internal quotation omitted). Although the Seventh Circuit has found Sandin applicable in the involuntary commitment context, see Theilman v. Leean, 282 F.3d 478 (7th Cir. 2002),[5] a case cited by Defendants, the Third Circuit has maintained that an involuntarily committed patient's liberty

---

[4]       The Court notes that the statute of limitations for personal tort actions in New Jersey governs Plaintiff's 1983 claims. See Wallace v. Kato, 549 U.S. 384 (2007). Thus, the Third Circuit has consistently applied New Jersey's two-year statute of limitations to 1983 actions arising in this District. Wakefield v. Moore, 211 Fed.Appx. 99, 101 (3d Cir. 2006) (citing Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir.1989)). By contrast, federal law governs the accrual date for a 1983 cause of action. Wallace, 549 U.S. at 384. "Under those principles, it is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.'" Id. (citation omitted). Here, Plaintiff's claim arising from his five day internment in Ward 2 accrued on November 21, 2006 and would be time barred as of November 21, 2008. Nonetheless, at this time, the Court makes no findings as to whether any applicable tolling period applies to this claim and whether it can be asserted against a different, unnamed defendant.

[5]       In Theilman, the Seventh Circuit found Sandin applicable to an involuntarily committed patient previously found guilty of a sexual offense which by the operation of Wisconsin law, mandated that he could be placed in a treatment facility after formal commitment proceedings. 282 F.3d at 478 (citing a Wisconsin law that permitted the state to commit a sexually violent person, defined as one who has committed a sexually violent crime, against his will). Defendants' reference to Theilman, however, is unconvincing. As discussed infra, individuals previously found guilty of a crime who are later committed to an institution as a result of their underlying convictions are not similarly situated to Plaintiff.

14

interests are to be balanced against the state's interest in maintaining order as expounded on in Youngberg.  Halderman, by Halderman v. Pennhurst State School & Hosp., 707 F.2d 702 (3d Cir. 1983).

Defendants contend, however, that the Third Circuit has recently extended Sandin to civil commitments similar to that of Plaintiff. In support, Defendants cite the Third Circuit's decision in Deavers v. Santiago which held, inter alia, that Sandin applied to a convicted sex offender civilly committed to an institution run by the NJDHS pursuant to the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24-27.38.  243 Fed. Appx. 719 (3d Cir. 2007). In applying Sandin, the Third Circuit found that the plaintiff was not entitled to procedural due process protections. Id. at 2-3.  However, both Deavers, and the case it relies on, Leamer v. Fauver, are distinguishable from the case at bar.  In both Deavers and Leamer, the Third Circuit was faced with former felons convicted of violent sexual offenses who were only civilly committed as a result of their crimes and operation of New Jersey law.  In Leamer, the Third Circuit highlighted the unique nature of patients whose commitment is mandated by state statute due to their convictions for sexual offenses:

> The United States Supreme Court has repeatedly recognized that civil commitment procedures may implicate fundamental liberty interests. See, e.g., Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Leamer has not been civilly committed. He has been detained by the state because he has broken its laws. But here, confinement and treatment are inextricably linked. We note in this regard that Leamer's claim of a liberty interest that was created by New Jersey's sentencing of him under a statutory scheme that predicates the term of his sentence on his response to treatment is somewhat unique. The sentencing court has classified Leamer as having a "mental aberration" and in need of "specialized treatment." That assessment has automatically subjected him to the maximum incarceration permitted by law unless he is cured prior to that point. Neither good behavior, parole policies, or other credits can affect the term of his sentence. Only

15

successful therapy can shorten his incarceration.

288 F.3d 532, 540 (3d Cir. 2002).  Moreover, in Rivera v. Rogers, 224 Fed. Appx. 148 (3d Cir.

2007), the Third Circuit affirmed the District Court's decision to apply Sandin to a convicted sex

offender's challenge of his civil commitment conditions, relying on the plaintiff's previous

status as a prisoner:

> Given that [the plaintiff] has been convicted of a crime and is being detained in
> the Special Treatment Unit because of his classification as a sexually violent
> predator under New Jersey's Sexually Violent Predator Act, his status is similar to
> that of a prisoner and we agree with the District Court's decision to proceed with
> its analysis of his First Amendment claim by looking to case law interpreting a
> prisoner's rights.

Indeed, as "(i)t would be anomalous to afford a pretrial detainee less constitutional protection

than one who has been convicted," Hampton v. Holmesburg Prison Officials, 546 F.2d 1077,

1079-80 (3d Cir. 1976), the same can be said of civil commitments imposed on someone such as

Plaintiff who has not been found guilty of a crime.  Plaintiff is not a sex offender mandated by

New Jersey law to serve a prison sentence followed by an indeterminate civil commitment; he is

an involuntarily committed patient charged with a crime that he was found not guilty of by

reason of insanity.[6]

    In addition, the facts underlying Deavers are also not analogous to the case at bar.  In

Deavers, the plaintiff, a patient at a mental hospital, argued that the defendant's summary

judgment motion should be denied because a disputed issue of material fact was raised by an

incident where the patient came into physical contact with a female MSO, resulting in a change

---

[6]     The Court notes that Plaintiff has filed numerous lawsuits in this District against AKFC
officials and other state actors.  In each of those instances, other district courts in New Jersey
have exclusively applied Youngberg without reference to Sandin or Leamer when construing
Plaintiff's claims.  See e.g., Monroe, 2006 WL 1468394 at *1; Aunach, 2005 WL 3077922 at *1;
Brandt v. Delbene, No. 05-1524, 2006 WL 776797, at *1 (D.N.J. March 27, 2006).

in the patient's treatment.  Deavers, 243 Fed.Appx. at 2. The plaintiff asserted that the contact was accidental while the defendant maintained plaintiff purposefully rubbed up against her.  Id. In affirming the District Court's grant of the defendant's motion, the Third Circuit stated "whether [the plaintiff] came into contact with the female guard intentionally or accidentally is immaterial" because under Sandin, the plaintiff was foreclosed from asserting his procedural due process claims.  Id. Here, as discussed supra, Plaintiff is not foreclosed by Sandin from asserting his procedural due process claims.  Further, unlike Plaintiff who alleges that Ganie fabricated or exaggerated the incident report in order to avenge the firings of her co-workers, the plaintiff in Deavers did not contend that the female guard who reported the incident did so with malevolent intentions. See id.

In sum, patients like Plaintiff cannot be saddled with conditions that amount to significant deprivations of liberty interests unless professional, reasoned judgment requires it.  Although harsh, uncomfortable conditions may be the sin qua non of everyday life in correctional facilities, restrictive measures absent professional judgment are not constitutionally permissible for individuals civilly committed without an underlying conviction.  Accordingly, this Court finds that Plaintiff's claims may proceed if Defendants are not entitled to qualified immunity.

### D. Qualified Immunity

Defendants contend that even if Plaintiff's Due Process rights were violated, they are entitled to qualified immunity.  Given "the importance of resolving immunity questions at the earliest possible stage in litigation," Saucier v. Katz, 533 U.S. 194, 200 (2001),[7] the Court must

---

[7]    In addition, the Supreme Court stressed that "[t]he privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier, 533 U.S. at 200. In the instant matter, the present Motion is the first time Defendants have raised the qualified immunity defense.

determine whether Defendants are entitled to qualified immunity as a defense to Plaintiff's 1983 claims.  Under the doctrine of qualified immunity, state actors performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). More simply stated, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 199 (2001) (citation omitted).  This defense strikes a balance, shielding those officers from liability that mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights.  Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).

The qualified immunity analysis, as set forth by the Supreme Court in Saucier, is two-fold. First, the court must determine "whether there is even a wrong to be addressed in an analysis of immunity."  "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." Curley, 499 F. 3d at 207.  The second step of the Saucier analysis asks whether a reasonable officer would have known his conduct to be unlawful given the specific circumstances and facts of the case.  In other words, a defendant is not entitled to qualified immunity  if, at the time of the incident, the right that was violated was clearly established. Torisky v. Schweiker, 446 F.3d 438, 443 (3d Cir. 2006) ("This second inquiry 'must be undertaken in light of the specific context of the case.'").

At the onset, the Court notes that Plaintiff does not contest Defendants' status as

_____

Accordingly, the Court will determine whether Defendants are entitled to such immunity.

18

"government officials" for the purposes of determining whether qualified immunity applies to Defendants' actions.  Both Defendants are employees of the New Jersey Department of Human Services, a state agency whose officials are entitled to assert qualified immunity. See Michaels v. New Jersey, 50 F. Supp. 2d 353, 600 (D.N.J. 1999) (citing  Kerr v. Lyford, 171 F.3d 330 (5th Cir.1999)); Stratford Nursing and Convalescent Center, Inc. v. Kilstein, 802 F. Supp. 1158, 1165 (D.N.J. 1991) (finding officials with the New Jersey Department of Human Services were cloaked with qualified immunity). Accordingly, this Court assumes that Defendants are government officials within the contours of qualified immunity, and are entitled to qualified immunity if they satisfy the two-step Saucier inquiry.

Applying this two-part test, the Court finds that, under the facts as set forth by Plaintiff, Plaintiff has properly alleged constitutional violations, thereby satisfying the first factor of the qualified immunity analysis. See supra.  As to the second factor, the Court finds that neither Defendant is entitled to qualified immunity.  The Court is satisfied that the actions alleged in Plaintiff's Complaint are ones that a reasonable person would have known would constitute a violation of Plaintiff's rights.  Clearly, punishing Plaintiff by placing him in isolation is an egregious violation of the Fourteenth Amendment Due Process Clause.[8] No reasonable professional in Ganie's position would have believed herself authorized to fabricate disciplinary reports for the purpose of punishing a patient and subsequently keeping the patient confined to isolation for an indeterminate amount of time.

Moreover, Agrawal, as a trained psychiatrist practicing in a state facility, should be aware of N.J.S.A. 30:4-24.2(d)(3), and the right of involuntarily committed patients to be free from

---

[8]     Of course, this assumes the facts in the light most favorable to the non-movant, as this Court must on a motion for summary judgment.

needless restraints if a screening interview reveals a patient need not be placed in isolated confinement.  Even if this Court were to assume Agrawal was completely unaware of the applicable state law, Agrawal's alleged awareness of previous incidents between Ganie and Plaintiff should have given Agrawal pause before she signed off based on Ganie's disciplinary report.  Clearly, N.J.S.A. 30:4-24.2(d)(3) aims to protect patients from being subjected to harsher conditions without the patient first being evaluated to see if the situation warrants such an order.  Here, Agrawal disregarded this state mandate. Nothing in the record disproves Plaintiff's claim that Ward 2 is significantly different than Plaintiff's regular unit, Ward 7, in the sense that Plaintiff was prevented from accessing his personal belongings and attending his treatment sessions.  If the facts are as Plaintiff alleges, Agrawal subjected Plaintiff to a significantly more restrictive environment that lacked adequate treatment without first interviewing Plaintiff as required by N.J.S.A. 30:4-24.2(d)(3). Accordingly, this Court finds that Defendants are not entitled to qualified immunity.

### E. Pro Bono Counsel

"Where an unrepresented Plaintiff in a civil suit is indigent, and where good cause exists for the appointment of pro bono counsel under 28 U.S.C. 1915(e)(1), the District Court has discretion and authority to appoint pro bono counsel even in the absence of a specific motion to do so." Williams v. Hayman, 488 F. Supp. 2d 446, 447 (D.N.J. 2007). Although Plaintiff has not appealed the Honorable Tonianne J. Bongiovanni's denial of his application for pro bono counsel, this Court finds, sua sponte, that the interests of justice require the appointment of counsel to assist Plaintiff in the prosecution of this case. See Williams, 488 F. Supp. 2d at 448-49 (appointing pro bono counsel sua sponte); see also Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993) ("[W]e emphasize the appointment of counsel under 1915 may be made at any point in the

20

litigation and may be made by the district court <u>sua</u> <u>sponte</u>").

In determining whether to appoint pro bono counsel, a court must consider the following factors set forth in <u>Tabron v. Grace</u>:

 (1) the claim has some merit;

 (2) the <u>pro</u> <u>se</u> party lacks the ability to present an effective case without an attorney;

 (3) the legal issues are complex or, the ultimate legal issues are not complex, but the <u>pro</u> <u>se</u> party lacks the familiarity with the rules of evidence and discovery needed to translate understanding of the law into presentation of the proofs;

 (4) factual investigation will be necessary and the party is not adequately able to pursue said investigation;

 (5) the case is likely to turn on credibility determinations;

 (6) the case will require expert testimony; and

 (7) the party is unable to attain and afford counsel on his/her own behalf.

<u>Lamas v. Gonzales</u>, No. 07-3351, 2007 U.S. Dist. LEXIS 85643, at *2 (D.N.J. Nov. 16, 2007) (citing <u>Parham v. Johnson</u>, 126 F.3d 454 (3d Cir. 1997)).  A <u>pro</u> <u>se</u> litigant need not meet each of the <u>Tabron</u> factors for the Court to appoint counsel.

Turning to the <u>Tabron</u> factors, the Court finds that the case has merit given the dearth of evidence presented by Defendants to rebut Plaintiff's claims and the significance of the rights asserted by Plaintiff in his Complaint, that Plaintiff's ability to investigate his claims any further are severely hampered by his commitment to AKFC, that factual investigation is necessary to resolve disputed issues of fact, that Plaintiff is an indigent incapable of attaining counsel on his own behalf, and pivotal issues in the case at bar turn on credibility, specifically whether Ganie's disciplinary report was fabricated.  On the other hand, although the record does not reveal an apparent need for expert testimony, pro bono counsel, after further investigation, may determine

that expert testimony is necessary to prove some of Plaintiff's claims.   Given the strength of Plaintiff's claims, the need for further investigation, and issues of credibility stemming from the November 17th dispute, the Court finds it appropriate to appoint Plaintiff pro bono counsel at this stage in the litigation.

## III. CONCLUSION

For the foregoing reasons, this Court denies Defendants' Motion for Summary Judgment. Further, the Court appoints Plaintiff pro bono counsel to assist him in this prosecution.


Dated: December 18, 2008                                    /s/ Freda L. Wolfson_____
                                                            United States District Judge